IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN JONES | : | CIVIL ACTION |
| | : | |
| v. | : | No. 25-1511 |
| | : | |
| EASTERN ATLANTIC STATES | : | |
| CARPENTERS PENSION FUND | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                      **July 16, 2026**

This is a dispute about pension benefits due under the Employee Retirement Income Security Act (ERISA). Plaintiff Bryan Jones, a participant in Defendant Eastern Atlantic States Carpenters Pension Fund's plan (the "Plan"), seeks $62,229 in retroactive pension benefits for August 1, 2023 through July 31, 2024. He argues he elected August 1, 2023 as his effective benefit commencement date. Defendant (the "Fund") contends Jones did not complete the required application process to place his pension in pay status until July 2024, so benefits properly commenced on August 1, 2024. The parties have filed cross-motions for summary judgment. Because the Plan vested the Fund with discretionary authority and because the Fund's decision was reasonable and supported by the administrative record, the Court will deny Jones's motion and grant the Fund's motion.

**BACKGROUND**

The parties agree on the material facts. The Plan is a multiemployer defined benefit pension plan governed by ERISA and managed by the Fund. Obuchowicz Decl. ¶ 5, Dkt. No. 23-2. The Fund administers benefits through a board of trustees (the "Board"). *Id.* ¶¶ 6–7. Jones was a union carpenter for 33 years who worked for contributing employers to the Plan. Jones Decl. ¶ 1, Dkt. No. 24-1.  He is thus a participant in the Plan. *Id.* ¶ 2.

On June 15 and June 20, 2023, Jones contacted the Fund about retiring effective August 1, 2023. *Id.* ¶¶ 4–7. In preparing the application, the Fund determined Jones had divorced in 1997 and the divorce decree referenced unresolved equitable distribution issues. Pauro Email, June 19, 2023, FUND26, Dkt. No. 22-2 at 26. On June 22, 2023, Fund representative Robert Pauro emailed Jones: "The divorce decree explicitly states that a final order has not yet been entered regarding claims for equitable distribution. We cannot proceed unless you provide a final judgement [sic]. If you don't have anything else, you will need to obtain an affidavit from your ex-spouse stating that she is waiving her right concerning division of property." Pauro Email, June 22, 2023, FUND24, Dkt. No. 22-2 at 24.

The administrative record reflects no qualified domestic relations order (QDRO)[1] in June 2023. Jones submitted a draft domestic relations order on January 29, 2024. Draft QDRO, FUND68–76, Dkt. No. 22-2 at 68–76. The Fund conditionally qualified the order in March 2024 and received a court-entered QDRO on April 5, 2024. Final QDRO, FUND63–66, Dkt. No. 22-2 at 63–66. The Fund then sent the QDRO to its actuary for calculations. On July 3, 2024, the actuary provided calculations allocating the benefit between Jones and his ex-spouse for an August 1, 2024 benefit commencement date. Actuary Letter, FUND49–52, Dkt. No. 22-2 at 49–52.

Before signing and submitting his pension application, Jones appealed the Fund's decision. Jones Decl. ¶¶ 18–19. On July 1, 2024, he emailed the Fund stating he believed pension payments should have started on August 1, 2023. Jones Email, July 1, 2024, FUND2, Dkt. No. 22-2 at 2. On July 8, 2024, Jones's counsel submitted a letter arguing the QDRO process did not control Jones's

---

[1] A QDRO is a "state-court order or judgment that relates to alimony, child support, or some other state domestic-relations matter and that (1) recognizes or provides for an alternate payee's right to receive all or part of any benefits due a participant under a pension, profit-sharing, or other retirement benefit plan." *Qualified Domestic-Relations Order*, Black's Law Dictionary (12th ed. 2024).

benefit commencement date and Jones was entitled to approximately $75,000 in retroactive benefits. Jones Letter, July 8, 2024, FUND 3–6, Dkt. No. 22-2 at 3–6. The Fund acknowledged his appeal and advised him it would be reviewed at the Board's September 5, 2024 meeting. Appeal Receipt Letter, July 8, 2024, FUND91, Dkt. No. 22-2 at 91. On July 16, 2024, Jones filed a pension application identifying August 1, 2024 as the benefit commencement date. Pension Application, FUND32–39, Dkt. No. 22-2 at 32–39. On July 18, 2024, he submitted additional paperwork to the Fund identifying August 1, 2024 as the benefit commencement date. FUND40–48, Dkt. No. 22-2 at 40–48.

At its September 5, 2024 meeting, the Board denied Jones's appeal. The Fund notified Jones of the final denial in a letter dated September 11, 2024. Appeal Denial, FUND7–8, Dkt. No. 22-2 at 7–8. The letter quoted Section 3.03(b) of the Plan and acknowledged that Jones argued the August 1, 2023 inquiry date should have been used because the Fund allegedly failed to timely administer the QDRO. *Id.* The Fund rejected that argument because no QDRO existed at the time and Jones had not provided a signed marital settlement agreement. *Id.* The Fund also found the QDRO, once received, was "qualified and implemented in a timely manner" under the Plan's procedures. *Id.* The letter advised Jones he had exhausted his remedies under the Plan and could sue under ERISA. *Id.*

Section 3.03(a) of the Plan makes a participant eligible for an early retirement pension if he ceases to be an active participant before normal retirement and satisfies age and service requirements. Plan Document, FUND 166, Dkt. No. 22-3 at 70. Section 3.03(b) provides that early retirement "shall commence on the first date of the month elected" by the participant that is on or after the date the participant ceased to be active and on or after the date the participant makes the election, and no layer than the first day of the month after the participant's sixty-fifth birthday. *Id.*

3

Section 5.01 provides that the Board has "authority to control and manage the operation and administration of the Plan" and is the Plan's named fiduciary. Plan Document, FUND203, Dkt. No. 22-3 at 107. It also provides that the Board has the right, in its "sole and exclusive discretion," to decide all questions concerning interpretation, application, or administration of the Plan, including "rules of eligibility," "rules for participation," and the "resolution of factual disputes in benefit or beneficiary issues." *Id.* Section 5.02 requires any person claiming benefits to apply "on a form furnished or approved by the Trustees" and to furnish "such proof of his or her entitlement to benefits as the Trustees may reasonably require."[2] *Id.*

---

[2]    The provisions, in relevant part, are:

>    3.03    Early Retirement Pension
> (a)    Each Vested Participant who satisfies the following three conditions shall be eligible to receive an Early Retirement Pension:
> . . .
> (b)    Such Early Retirement Pension shall commence on the first date of any month elected by him or her which is on or subsequent to the date he or she ceased to be an Active Participant and on or subsequent to the date he or she makes his election but on or prior to the first day of the month following the month in which his or her 65th Birthday occurs, and shall cease on the first day of the month in which his or her death occurs.
> . . .
> 5.01    Named Fiduciary. The Board shall have authority to control and manage the operation and administration of the Plan and shall be the named fiduciary of the Plan referred to in Section 402(a)(1) of [ERISA].
>
> The Board shall have the right to decide in their sole and exclusive discretion all questions arising from or respecting the interpretation, application or administration of the Plan, including, but not limited to:
> (a)    The rules of eligibility for benefits or services furnished by the Plan;
> (b)    The rules for participation in the Plan;
> (c)    The resolution of factual disputes in benefit or beneficiary issues or disputes and such decisions by the Board shall be conclusive and binding upon all Participants, dependents and/or beneficiaries.
>
> 5.02    Application for Benefits – Denial of Claims and Appeals Procedures. Any person who claims entitlement to benefits from the Plan must make application therefor on a form furnished or approved by the Trustees and must furnish such proof of his or her entitlement to benefits as the Trustees may reasonably require.

4

The Fund also issued a Summary Plan Description (the "SPD"). Under the heading "How to Claim Your Benefits," the SPD states a participant "may call the Fund Office to schedule an appointment and apply in person" or may "file a written application with the Fund Office" before the participant wants the benefit to begin. Summary Plan Description, J131, Dkt. No. 22-4 at 38. The SPD also states the Fund may request "any information it reasonably requires to determine" the right to a benefit and "may deny the benefit if the information is not provided on a timely basis." *Id.* In the QDRO section, the SPD explains that the Fund will pay benefits "in compliance with a court-issued [QDRO] that meets Plan and all other ERISA standards." Summary Plan Description, J132, Dkt. No. 22-4 at 39. The SPD further explains that the Fund will "treat a domestic relations order as a claim for benefits under the Plan," and, if a participant is scheduled to receive payments while the Fund is "considering the qualified status of the order," it will segregate amounts potentially payable to the spouse for up to eighteen months. *Id.* The SPD also states: "The [Fund] will generally ask you about any divorce or property settlement agreement when you apply for payment of benefits.  You and your former spouse may need to verify that a former spouse has no right or claim to your Plan benefits before payment to you begins." *Id.* And under the heading "Your Obligations," the SPD states the Fund "must be notified in writing if" a participant gets married or divorced, and the participant must submit a divorce decree and notify the Fund of any QDRO and/or property settlement agreement. Summary Plan Description, J133, Dkt. No. 22-4 at 40.

Jones filed this action seeking retroactive benefits under 29 U.S.C. § 1132(a)(1)(B). He contends the QDRO did not change his selected benefit commencement date, and the Fund should

---

Plan Document, FUND166, 203, Dkt. No. 22-3 at 70, 107.

have processed his benefits effective August 1, 2023. Pl.'s Summ. J. Mem. 9–18, Dkt. No. 24-4. The Fund contends Jones was eligible for a pension but did not satisfy the Plan's requirements to commence benefits then. Def.'s Summ. J. Mem. 6–11. The parties have filed cross-motions for summary judgment. The Court held a hearing on the motions on March 11, 2026.

**STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In an ERISA benefits case brought under § 1132(a)(1)(B), courts generally review the administrative record and decide whether the plan administrator's benefits determination can stand. *See, e.g.*, *Orvosh v. Program of Grp. Ins. for Salaried Emps. of Volkswagen of Am., Inc.*, 222 F.3d 123, 128–29 (3d Cir. 2000); *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011); *Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 271 (3d Cir. 2021) ("[J]udicial review of an ERISA fiduciary's discretionary adverse benefit decision is confined to the information contained in the administrative record.").

A denial of benefits under § 1132(a)(1)(B) is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan grants such discretion, courts apply abuse-of-discretion review, often described as arbitrary-and-capricious review in this Circuit. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010); *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011) ("In the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical."). Under the arbitrary and capricious standard, courts will uphold the administrator's decision unless "it is 'without reason, unsupported by substantial evidence or erroneous as a matter

of law.'" *Howley*, 625 F.3d at 792 (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

**DISCUSSION**

Jones argues the Court should review the denial of benefits under a de novo standard because, in his view, the Plan documents do not specifically authorize the Fund to delay commencement of his benefits while the QDRO issue is resolved. Pl.'s Summ. J. Mem. 13–14. The Fund contends the arbitrary and capricious standard applies because the Plan documents grant the Fund broad discretionary authority. Def.'s Summ. J. Mem. 4–6. The Court agrees with the Fund and will review the denial under an arbitrary and capricious standard.

"Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan." *Luby v. Teamsters Health, Welfare, & Pension Tr. Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991). Discretionary powers "may be granted expressly or implicitly." *Viera*, 642 F.3d at 413. The Plan grants discretionary authority to the Fund and the Board. Section 5.01 provides that the Board has "authority to control and manage the operation and administration of the Plan" and the right to decide, in its "sole and exclusive discretion," questions concerning the interpretation, application, and administration of the Plan, including eligibility and factual disputes. Plan Document, FUND203. Section 5.02 further provides that any person claiming entitlement to benefits "must make application therefor on a form furnished or approved by the Trustees" and "must furnish such proof of his or her entitlement to benefits as the Trustees may reasonably require." *Id.* The SPD likewise states the Board's construction, interpretation, or application of the Plan and its rules, including factual and eligibility determinations, is final and conclusive. Summary Plan Description, J131. The Plan therefore expressly grants the Fund discretionary authority.

Relying on *Gritzer v. CBS, Inc.*, 275 F.3d 291 (3d Cir. 2002), Jones nonetheless argues deference should not apply here. Pl.'s Summ. J. Mem. 14. In *Gritzer*, the Third Circuit declined to defer to a plan administrator's position where the administrator had not interpreted the plan in deciding the benefit claim. 275 F.3d at 295–96. *Gritzer* therefore stands for the proposition that courts should defer to an administrator's actual reasoned decision. *Id.* at 296 ("[I]t is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer."). Here, the administrative record shows the Fund interpreted the terms of the Plan in reaching its decision. The Fund told Jones in June 2023 that it could not proceed because the divorce decree showed unresolved equitable distribution issues and Jones provided no final judgment or waiver. The Board considered Jones's appeal at a meeting, applied the Plan's procedures, and denied retroactive commencement of benefits because no QDRO existed when Jones first inquired about his benefits. The Fund therefore exercised the discretion granted by the Plan. Because the Plan grants the Fund discretionary authority to interpret and administer the Plan, and the Fund exercised that authority, the Court will review the denial of benefits under the arbitrary and capricious standard.

On the merits, the key question is whether the Fund reasonably concluded that Jones did not satisfy the requirements to commence benefits on August 1, 2023. The record shows the Fund did so.

Jones's core argument is that Section 3.03(b) of the Plan allowed him to elect August 1, 2023 as his commencement date and that his June 2023 telephone calls were enough to put his pension into pay status. Section 3.03(b) states that an early retirement pension "shall commence on the first day of any month elected by" the participant that is on or after the date he ceased to be active and on or after the date he makes the selection. Plan Document, FUND166. Section 5.02

goes on to state that a person claiming benefits must apply "on a form furnished or approved by the Trustees" and must provide "proof of his or her entitlement to benefits as the Trustees may reasonably require." Plan Document, FUND203. Reading these provisions together, a participant needs more than a phone call to complete an election. This interpretation is further supported by the SPD, which states that a participant may call to "schedule an appointment and apply in person" or may file a written application before the benefit is to begin. Summary Plan Description, J131. It also states the Fund may request information reasonably required to determine a participant's right to a benefit. *Id.*

The record supports the Fund's determination that Jones had not completed the requirements to commence benefits on August 1, 2023. When he contacted the Fund in June 2023, the Fund discovered his divorce decree stated a final order had not been entered regarding equitable distribution. The Fund then told him it needed a final judgment (i.e., a QDRO) or an affidavit from his former spouse waiving her right concerning division of his property. Furthermore, the SPD specifically contemplated a situation like Jones's, stating the Plan may ask about "divorce or property settlement agreement[s]" when a participant applies and that the participant may need to verify the former spouse has no right or claim to Plan benefits before payment begins. Summary Plan Description, J132.

The Fund has a reasonable basis for requiring this information. ERISA generally prohibits assignment or alienation of pension benefits, but an exception exists for a QDRO. 29 U.S.C. § 1056(d)(1), (d)(3); *see Boggs v. Boggs*, 520 U.S. 833, 851 (1997). A QDRO may create or recognize "an alternate payee's right to . . . receive all or a portion of the benefits payable" to a participant. 29 U.S.C. § 1056(d)(3)(B)(i)(I). Moreover, the SPD describes the Fund's QDRO rules, stating that the general non-assignment rule does not apply if an order is a QDRO. *See* Summary

Plan Description, J132–133. In other words, the Plan, mirroring ERISA, provides an exception for QDROs. The Fund therefore could reasonably require proof clarifying whether Jones's former spouse had a claim to the pension before placing him into pay status because the divorce decree showed unresolved equitable distribution issues.

Jones also did not submit a signed pension application in 2023. The record shows he submitted his application in July 2024, and that application identified August 1, 2024 as the effective pension date. Jones also signed additional paperwork identifying August 1, 2024 as his pension date. The Fund could reasonably construe the signed 2024 application as the operative application and election under the Plan.

Jones, however, emphasizes that he was eligible for an early retirement pension in 2023. That is true and not disputed by the Fund. But eligibility to receive a pension and satisfaction of the requirements to commence payment of the pension are distinct. A participant may be eligible for benefits but not yet in pay status because he has not applied on the required form, has not made a valid election, or has not provided proof reasonably required to calculate the benefit. The Plan provisions support that distinction. Section 3.03(a) governs eligibility for early retirement. Section 3.03(b) governs commencement after an election. And Section 5.02 governs application and proof of entitlement. The Fund reasonably read these provisions together.

Jones's final argument is that the QDRO process could not delay his benefit commencement date. For this argument, he relies on the Plan's SPD language about segregating amounts payable to an alternate payee and the Third Circuit's decision in *Files v. ExxonMobil Pension Plan*, 428 F.3d 478 (3d Cir. 2005). Neither supports his argument.

First, the SPD states that if a participant is "scheduled to receive payment" while the Plan considers the qualified status of a domestic relations order, the Plan will segregate amounts

potentially payable to the spouse while the order's qualified status is under consideration for up to eighteen months. Summary Plan Description, J132. This language mirrors ERISA's QDRO segregation rules. *See* 29 U.S.C. § 1056(d)(3)(H)(i) ("During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined . . . the plan administrator shall separately account for the amounts . . . which would have been payable to the alternate payee during such period if the order had been determined to be a qualified domestic relations order."). Based on the SPD, segregation only applies when a participant is already scheduled to receive payment and the Plan is considering whether a domestic relations order is qualified. In June 2023, Jones was not scheduled for payment under an approved application, and the Fund did not have a domestic relations order to evaluate. All it had was a divorce decree showing unresolved equitable distribution issues. ERISA's QDRO provisions, furthermore, do not require a plan to commence a participant's pension before the participant completes the application process. *See* 29 U.S.C. § 1056(d)(3). The Fund therefore did not act contrary to ERISA by requiring a final judgment or waiver before paying benefits.

Second, *Files* is materially different from the facts here. There, the question was whether an ex-spouse could get benefits under a property settlement agreement and post-death QDRO even though the participant had died before entering pay status. *Files*, 428 F.3d at 480–82. The Third Circuit held the pre-death property settlement agreement created a separate interest and could satisfy ERISA's QDRO framework. *Id.* at 488–91. The Third Circuit also rejected the plan's argument that a QDRO had to be submitted before the participant's death or before pay status. *Id.* *Files*, however, does not hold that a participant enters pay status solely by announcing an intended retirement date, notwithstanding formal application requirements and unresolved equitable distribution issues.

11

The Fund's decision was supported by substantial evidence and was not erroneous as a matter of law. The administrative evidence shows the Fund identified missing documentation related to Jones's divorce and told him it could not proceed without a final judgment or waiver. It shows a draft QDRO was not submitted until January 2024 and the court-entered QDRO was not received until April 2024. It shows the Fund calculated the benefits in July 2024 for an August 1, 2024 commencement. It shows Jones signed an application and related paperwork in July 2024 identifying August 1, 2024 as the effective benefit commencement date. And it shows the Fund considered Jones's appeal and explained the reasons for denial.

Jones criticizes the delay between his June 2023 calls and January 2024, when he submitted a draft QDRO to the Fund. But the record does not show the delay resulted from arbitrary conduct by the Fund. The Fund told Jones in June 2023 what documentation was missing. Jones did not send a draft QDRO until January 2024. Once the Fund received the court-entered QDRO in April 2024, it calculated and processed Jones's application for an August 1, 2024 payment date.

For the reasons stated, the Fund's decision survives arbitrary and capricious review.

**CONCLUSION**

In sum, Jones has not shown he was entitled to pension benefits effective August 1, 2023. The Fund reasonably determined he did not satisfy the Plan's requirement to commence benefits until 2024, after the Fund received the application and missing documents. The Court will therefore grant the Fund's motion for summary judgment and deny Jones's motion for summary judgment. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

12